## QUEENS COUNTY SURROGATE'S COURT.

In the matter of proving the Last Will &c., of MARY
SMITH, deceased.

Is it necessary to the due and proper *execution of a will*, under the statutes of this
state, that the witnesses should be *requested by the testator* to sign their names
thereto as witnesses?

APPLICATION upon petition and answer, to prove the will
of Mary Smith deceased.

RALPH E. PRIME, and
JOHN J. ARMSTRONG, *for proponent.*
BENJAMIN W. DOWNING, *for contestant.*

WM. H. ONDERDONK, *Surrogate.*—Although there has
been some conflicting testimony as to whether the testatrix
could write, and consequently whether the name subscribed
to the will is her signature, yet upon the whole case, as it
stands, the facts appear to be proven—

1. That the testatrix subscribed her name at the end of
the will.

2. That the subscription was made in the presence of the
witnesses.

3. That the question was put to her by Justice WILLETS,
"Mrs. Smith, do you acknowledge this to be your last will?"
and that she replied, "Yes I do." This within the decis-
ions, is a substantial compliance with the provision of the
statute requiring the testator at the time of executing the
instrument to declare it to be his last will and testament.

4. That the instrument was signed by two witnesses.

In tne matter of Mary Smith, deceased.

The statute requires the signing by the witnesses to be at the request of the testator. If there has been no request to the witnesses to sign, made by the testatrix, either in terms, or by some act, or such participation in some act or words of another, as will substantially amount to a request by the testatrix, then that requirement of the statute will not have been complied with, and the instrument cannot be admitted to probate.

It is sufficient if there has been a substantial compliance with this provision of the statute—a literal compliance is not required.

The evidence, however, must connect the testatrix with the request, so that the act may appear, from the facts testified to, and by a fair construction of their meaning, to have been in substance and effect the act of the testatrix. Such was the rule in *Coffin* agt. *Coffin*, (23 *N. Y.*, 9), where the court held that both of the witnesses having been sent for by the testator, and being present by his procurement, a request that one should sign, made in the presence of both, was to be construed under the circumstances as a request to both. So in *Cary* agt. *Peck*, (27 *N. Y.*, 9), it was held that a request to the witness made by the person who was attending to the execution of the will, made in the presence and hearing of the testator without any dissent on his part, was an adoption of the act by the testator and equivalent to a request by him.

So in the case of *Gamble* agt. *Gamble*, (39 *Barb.*, 373)—the witnesses were present by the procurement of the testator to witness his will. He signed it, declared it in the presence of the witnesses to be his last will, and then handed it to one of the witnesses, who signed it in his presence and passed it to the other, who also signed it, and was told by the testator to add the town and county he lived in. Under these circumstances the request was held to have been proved.

In all these cases the test, as stated by the chancellor in

*Nelson* agt. *McGifford,* (3 *Barb. Ch.,* 158), viz. : *that not only the witnesses, but the testator himself, must have understood, that they were witnessing the execution of the will in conformity with his (testator's) desire and wish,* seems to have been fully met.

What are the facts in the present case ?

The witness Coles W. White has no recollection of signing the will as a witness, or of any of the facts connected with the transaction. His mind is a perfect blank upon the subject. Mr. Lowerre, the other witness, is very clear in his recollection and states all that occurred with precision. There is no defect of memory in his case, and his testimony gives a history of the occurrence which may be taken to be correct.

He says that Justice WILLETS, who seems to have been the draftsman of the will, came to the house of the witness's father and asked the witness to sign the will. Up to this time the witness had not seen the testatrix. He went with Mr. Willets to his (Willets') office. The testatrix was at the table in a part of the office divided from the other part by a railing. Mr. White, the other witness, was also there. Mr. Lowerre saw the testatrix with a pen in her hand, apparently subscribing the will, though he did not see her actually make the letters of her name.

Justice WILLETS asked her, "Mrs. Smith, do you acknowledge this to be your last will?" and she replied, "Yes, I do." She then left the table, and moved some four feet away. Mr. Willets then said, "Now, Mr. White," and the witness White signed his name at the end of the instrument and handed the pen to the witness Lowerre, who also signed his name as a witness. There is nothing to show that either the will or attestation clause was read by or in the presence of the witnesses. The inference to be drawn from the facts proven is that it was not read.

This is the whole transaction. The witness Lowerre was

In the matter of Mary Smith, deceased.

not asked to attend as a witness by the testatrix, nor does it appear that she knew he was asked to attend at all, nor that she knew for what purpose he was present. There was no request by her that the witnesses should sign, either expressly made or to be inferred from the facts proven. If while she was at the table or within hearing, Mr. Willets had, by some apt words known and understood by her, and which would have conveyed to her his meaning, requested Mr. White and Mr. Lowerre to sign their names to the instrument as witnesses, and she had assented to the request either by words or a silent acquiescence, the case would have been brought within the authority of *Cary* agt. *Peck*, cited *supra*, and kindred cases. But the request of Mr. Willets, conveyed in such ambiguous terms as "now Mr. White," even if she heard the words used, in default of any evidence showing that she had procured the attendance of the witnesses, or even knew that the signing by witnesses was an essential part of the due execution of a will, cannot by any reasonable interpretation of the effect of evidence, be construed into a request by the testatrix.

The witness Lowerre knew he was witnessing the *testatrix's* will, because he had previously been requested to do so by Justice WILLETS, the testatrix at the time not being present. Lowerre's testimony is that the request was made by Mr. Willets, in the bar-room of the witness's father, in a building adjoining Willets' office.

Under these circumstances, can it with any propriety or truth be said that the evidence shows the witness understood he was witnessing the will at the request of the testrix, or that she understood he was witnessing it in conformity with her desire and wish, or even knew he was witnessing her will at all?

Under the circumstances of this case, believing that the provision of the statute requiring the witnesses to sign the will at the request of the testatrix, has not been complied with, probate of the will is denied.

NOTE.—This case was heard on appeal to the general term of the second judicial district in February, 1870, and the decision of the surrogate was reversed and the question sent to the circuit for trial under the statute. The decision at general term was announced by J. F. BARNARD, J., but no formal written opinion given.